UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROY J. JONES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-5038** |
| **WARDEN, LA. STATE PENITENTIARY** | **SECTION "R"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.   Factual and Procedural Background

The petitioner, Roy J. Jones ("Jones"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On April 30, 1993, Jones was indicted by a Terrebonne Parish Grand Jury for the aggravated rape of four-year-old S.S.[3]  Jones entered a plea of not guilty to the charge on June 11, 1993.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 3, Indictment, 4/30/93; Grand Jury Return, 4/30/93.  Louisiana law requires the use of initials to identify minors and victims of sex crimes, and this Court will abide by that preference. La. Rev. Stat. Ann. § 46:1844W.

[4] St. Rec. Vol. 1 of 3, Minute Entry, 6/11/93.

The record reflects that, beginning in 1990, Jones and S.S.'s mother began seeing each other, although S.S.'s mother was married.[5] In January of 1992, S.S.'s mother was jailed for stabbing Jones's sister-in-law. At that point, four-year-old S.S. began living with her grandmother. Soon after, the grandmother noticed that S.S. began having a rash and discharge from her genital area. The grandmother sought medical care for her. After eight months, the doctor's finally diagnosed that S.S. had genital warts, a sexually transmitted disease. A pelvic examination revealed that S.S. had experienced vaginal penetration. S.S. eventually revealed that Jones had engaged in sexual intercourse with at least four times while they were alone at her mother's home.

Jones was tried before a jury on August 14 through 16, 1995, and was found guilty as charged.[6] At a hearing held September 27, 1995, the Trial Court denied Jones's motions for a new trial and for post-verdict judgment of acquittal.[7] Through different counsel, on November 13, 1995, Jones filed another motion for new trial and a motion for post-verdict judgment of acquittal.[8] At a hearing held January 12, 1996, Jones's counsel waived the motions and any legal delays, and the Trial Court sentenced Jones to serve life in prison at hard labor without benefit of parole, probation, or suspension of sentence.[9]

---

[5] The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Jones*, 728 So.2d 29 (La. App. 1st Cir. 1998) (Table); St. Rec. Vol. 2 of 3, 1st Cir. Opinion, 97 KA 2751, pp. 2, 3-6, 11/6/98.

[6] St. Rec. Vol. 1 of 3, Trial Minutes, 8/14/95; Trial Minutes, 8/15/95; Trial Minutes, 8/15/95; Verdict of the Jury, 8/16/95; Trial Transcript, 8/14/95; Trial Transcript, 8/15/95; Trial Transcript, 8/16/95.

[7] St. Rec. Vol. 1 of 3, Hearing Minutes, 9/27/95; Motion for New Trial, 9/25/95.

[8] St. Rec. Vol. 1 of 3, Motion for New Trial, 11/13/95; Motion for Post-Verdict Judgment of Acquittal, 11/13/95.

[9] St. Rec. Vol. 1 of 3, Sentencing Minutes, 1/12/96; St. Rec. Vol. 2 of 3, Sentencing Transcript, pp. 2, 8, 1/12/96.

On September 30, 1997, Jones was granted an out of time appeal to the Louisiana First Circuit Court of Appeal.[10] His appointed counsel asserted that the evidence was insufficient to support the conviction.[11] On November 6, 1998, the Louisiana First Circuit affirmed Jones's conviction and sentence finding the claim meritless.[12]

The Louisiana Supreme Court denied Jones's related writ application without stated reasons on April 23, 1999.[13] Jones's conviction was final under federal law ninety (90) days later, on July 22, 1999, when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the U.S. Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1); *see also*, *Jiminez v. Quarterman*, 555 U.S. 113, 121 (2009) (a state defendant's conviction is not final for purposes of seeking federal habeas review until the conclusion of the out of time appeal process).

Over one year and three months later, on November 5, 2000, Jones signed and submitted an application for post-conviction relief to the Trial Court in which he asserted that he was denied effective assistance of counsel and the evidence was insufficient to convict him.[14] After receiving additional briefing, on January 19, 2001, the Trial Court denied relief on the sufficiency of the

---

[10]St. Rec. Vol. 1 of 3, Motion for Out of Time Appeal, 9/30/97; Trial Court Order, 9/30/97. His original appeal was dismissed for failure to pay the necessary costs. St. Rec. Vol. 1 of 3, Trial Court Order, 3/31/97.

[11]St. Rec. Vol. 2 of 3, Appeal Brief, 97-KA-2751, 12/29/97.

[12]*Jones*, 728 So.2d at 29; St. Rec. Vol. 2 of 3, 1st Cir. Opinion, 97 KA 2751, 11/6/98.

[13]*State v. Jones*, 742 So.2d 875 (La. 1999); St. Rec. Vol. 2 of 3, La. S. Ct. Order, 98-KO-3190, 4/23/99; La. S. Ct. Letter, 98-KO-3190, 12/29/98. The State failed to provide a copy of this writ application for the Court to determine whether it was timely filed as part of the AEDPA finality calculation. Jones is therefore given the benefit of the doubt.

[14]St. Rec. Vol. 2 of 3, Uniform Application for Post-Conviction Relief, 11/6/00 (dated 11/5/00).

evidence claim as repetitive and procedurally barred, citing La. Code Crim. P. art. 930.4.[15] After further proceedings, the Trial Court also denied relief as to Jones's supplemental claim that his counsel failed to adequately cross-examine the victim at trial.[16]

The Trial Court held evidentiary hearings on November 15, 2002, and March 14, 2003, to consider the remaining arguments in support of Jones's ineffective assistance of counsel claim.[17] On March 25, 2003, the Trial Court denied relief as to the remaining claims finding no merit under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).[18]

The Louisiana First Circuit denied Jones's two writ applications without stated reasons on July 28, 2003 and October 20, 2003.[19] On September 24, 2004, the Louisiana Supreme Court denied Jones's subsequent writ application without stated reasons.[20]

Over one year later, on October 9, 2005, Jones's submitted a second application for post-conviction relief to the state trial court seeking to have DNA testing conducted.[21] The Trial Court denied the application as meritless on November 25, 2009.[22] Both the Louisiana First Circuit and

---

[15]St. Rec. Vol. 2 of 3, Trial Court Judgment, 1/19/01; Reasons for Judgment, 1/19/01; *see also*, Trial Court Order, 11/9/00; State's Response, 12/11/00.

[16]St. Rec. Vol. 2 of 3, Trial Court Supplemental Order, 6/21/01.

[17]St. Rec. Vol. 2 of 3, Hearing Transcript, 11/15/02; *see also*, Post-Hearing Brief, 3/24/03.

[18]St. Rec. Vol. 2 of 3, Trial Court Judgment, 3/25/03; Reasons for Judgment, 3/25/03.

[19]St. Rec. Vol. 2 of 3, 1st Cir. Order, 2003-KW-1149, 7/28/03; 1st Cir. Order, 2003-KW-1647, 10/20/03; St. Rec. Vol. 3 of 3, 1st Cir. Writ Application, 2003-KW-1149, dated 5/18/03; 1st Cir. Supplemental Writ Application, 2003-KW-1149, dated 7/8/03. The State failed to produce a writ number 2003-KW-1647 for the Court to determine the relevance and relationship of that case. Nevertheless, the pleadings from the Louisiana Supreme Court reflect that both appellate cases were included in his applications for review in that Court.

[20]*State ex rel. Jones v. State*, 882 So.2d 1155 (La. 2004); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2003-KH-2441, 9/24/04; La. S. Ct. Writ Application, 03-KH-2441, 9/2/03 (dated 8/18/03); La. S. Ct. Supplemental Writ Application, 03-KH-2441, 11/17/03; St. Rec. Vol. 2 of 3, La. S. Ct. Letter, 2003-KH-2441, 9/2/03.

[21]St. Rec. Vol. 2 of 3, Uniform Application for Post-Conviction Relief, 10/11/05 (dated 10/9/05).

[22]St. Rec. Vol. 2 of 3, Trial Court Judgment, 11/25/09; Reasons for Judgment, 11/25/09.

the Louisiana Supreme Court denied Jones's related writ applications without stated reasons on March 26, 2010, and April 29, 2011, respectively.[23]

Almost four years later, on January 4, 2015, Jones's submitted a third application for post-conviction relief to the state trial court asserting the following grounds for relief:[24] (1) the State relied on and suborned perjury to obtain the conviction; (2) he received ineffective assistance of counsel; and (3) he is actually and factually innocent of the crime where there was critical medical evidence that was not presented at trial to show that someone else penetrated the victim. He later added an additional claim asserting that the State withheld certain medical record evidence.[25] After additional briefing,[26] the Trial Court denied the application finding it untimely filed under La. Code Crim. P. art. 930.8.[27]

On November 5, 2015, the Louisiana First Circuit denied Jones's related writ application finding no error for the dismissal as untimely under La. Code Crim. P. art. 930.8.[28] On April 13, 2017, the Louisiana Supreme Court also denied Jones's subsequent writ application as untimely, citing La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995).[29]

---

[23]*State ex rel. Jones v. State*, 62 So.3d 102 (La. 2011); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2010-KH-1034, 4/29/11; La. S. Ct. Writ Application, 10-KH-1034, 5/6/10 (dated 4/26/10); St. Rec. Vol. 2 of 3, La. S. Ct. Letter, 2010-KH-1034, 5/6/10; 1st Cir. Order, 2010-KW-0243, 3/26/10. The State failed to provide a copy of the Louisiana First Circuit writ application.

[24]St. Rec. Vol. 2 of 3, Uniform Application for Post-Conviction Relief, 1/5/15 (dated 1/4/15).

[25]St. Rec. Vol. 2 of 3, Supplemental Brief, 3/2/15.

[26]St. Rec. Vol. 2 of 3, Trial Court Order, 1/13/15; Supplemental Order, 3/5/15; State's Response, 3/9/15.

[27]St. Rec. Vol. 2 of 3, Trial Court Judgment, 6/26/15; Reasons for Judgment, 6/26/15.

[28]St. Rec. Vol. 2 of 3, 1st Cir. Order, 2015-KW-1243, 11/5/15. The State failed to provide a copy of this writ application.

[29]*State ex rel. Jones v. State*, 215 So.3d 667 (La. 2017); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2015-KH-2292, 4/13/17; La. S. Ct. Writ Application, 15-KH-2292, 12/15/15 (dated 12/-/15 - no day indicated); St. Rec. Vol. 2 of 3, La. S. Ct. Letter, 2015-KH-2292, 12/10/15.

## II.     Federal Petition

On May 18, 2017, the clerk of this Court filed Jones's federal petition for habeas corpus relief in which he asserted the following grounds for relief:[30] (1) counsel was ineffective for inadequate cross-examination and failure to obtain, present, or object to certain medical evidence; (2) he is entitled to DNA testing; (3) he is actually and factually innocent because the prosecutor had medical records showing that the victim had genital problems before his arrest, failed to correct perjury at trial, withheld exculpatory evidence from the grand jury, and critical medical evidence was not presented at trial; and (4) counsel was ineffective when he failed to obtain all medical records for the victim, properly cross-examine a police officer about the victim's statement, obtain a transcript of the victim's competence hearing, and object to the doctor's testimony.

The State filed a response in opposition to Jones's federal habeas petition asserting that the petition was not timely filed.[31]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[32] applies to this petition, which is deemed filed in this Court no later than May 17, 2017.[33] The threshold questions on habeas review under the amended statute are whether the

---

[30] Rec. Doc. No. 1.

[31] Rec. Doc. No. 10.

[32] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[33] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The official stamp from the

petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State urges that Jones's federal petition be dismissed as untimely filed under the AEDPA. For the reasons that follow, the Court finds that Jones's federal habeas petition was not timely filed and must be dismissed.

## IV.    Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[34] *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001). As stated above, Jones's conviction was final under federal law on July 22, 1999. Pursuant to § 2244, Jones had one year from that date, or until July 22, 2000, to timely file a federal application for habeas corpus relief which he did not do. Thus, literal application of the statute would bar Jones's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

---

prison indicates that Jones delivered his pleadings to the legal department on May 17, 2017, for electronic mailing to a federal court. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his *pro se* petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

[34] The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

### A.  **Statutory Tolling**

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).  For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings.  *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).  The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.  *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir.

2001), *overruled on other grounds by Carey*, 536 U.S. 214 (finding that a motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In Jones's case, the AEDPA filing period began to run on July 23, 1999, the day after his conviction and sentence were final under federal law. The one-year AEDPA filing period continued to run from that date for 365 days, until July 22, 2000, when it expired. Jones's had no properly filed application for state post-conviction or other collateral review pending in any state court during that time period. His federal petition was filed under the federal mailbox rule on May 17, 2017, and therefore was not timely under the AEDPA.

In addition to this elapsed time period, the record reflects that Jones allowed another 1,758 days, or over 4 years, 9 months, and 3 weeks, to pass without having any application for state post-conviction or other collateral review pending in any state court before he finally filed his federal habeas petition on May 17, 2017. As shown in the procedural history previously, these additional periods of time span from and include September 25, 2004 through October 8, 2005 (379 days), April 30, 2011 through January 3, 2015 (1345 days), and April 14, 2017 through May 17, 2017 (34 days). Jones's attempts to obtain document and transcript copies throughout these years do not constitute state post-conviction or other collateral review. *See Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523, at *1 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp. 2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080,

2002 WL 63541, at *1 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-0115, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp. 2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

Thus, Jones's federal petition deemed filed on May 17, 2017, was filed over sixteen years and nine months after the AEDPA filing period expired on July 22, 2000. Jones's federal petition was not timely filed and should be dismissed with prejudice for that reason.

### B.     No Equitable Tolling

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was

warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Jones has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation. The record does not contain any of the extraordinary circumstances previously recognized by the precedent cited above that would warrant equitable tolling. The record instead reflects simply that the petitioner did not timely pursue federal habeas relief.

Jones's is not entitled to equitable tolling. His federal petition deemed filed on May 17, 2017 was not timely filed and must be dismissed with prejudice for that reason.

### C.      No Other Exception to the AEDPA Limitations Period

Jones's did not respond to the State's limitations defense.  However, in his petition, Jones suggests that his actual innocence should be considered as cause to review the merits of his claims.  His "new evidence" is the victims medical records from July to October of 1992, which he claims somehow demonstrate that he did not rape S.S. in December of 1991, but that other penetration occurred on October 30, 1992.[35]  Nevertheless, considering the claims of ineffective assistance of counsel and actual innocence asserted in Jones's federal petition, the record fails to present any other basis to excuse his failure to timely file this federal petition.  These claims do not provide an excuse for his failure to meet the AEDPA timeliness requirement for the reasons that follow.

#### 1.      No Relief Under *Martinez*

Jones cannot excuse his untimely federal petition based on his assertion of ineffective assistance of counsel claims.  The United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413, 133 S. Ct. 1911 (2013), do not provide a basis for review of this untimely filed federal petition or his ineffective assistance of trial counsel claims.  In *Martinez*, the Court held that a state court imposed "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'"  *Trevino*, 133 S. Ct. at 1914 (quoting *Martinez*, 566 U.S. at 17) (emphasis added).  The bar to review at issue here arises from petitioner's failure to meet the federal limitations deadline under the AEDPA.  The *Martinez* and *Trevino* decisions do not address or provide an excuse for the untimely filing of a federal habeas petition. *See*, *Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does

---

[35]*See* Rec. Doc. No. 1, p. 18.

not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun.13, 2014) (Order adopting Report). These cases also do not constitute new rules of constitutional law made retroactive on collateral review that would start a new one-year filing period under the AEDPA. *See*, *In re Paredes*, 587 F. App'x 805, 813 (5th Cir. 2014) (". . . the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).

For these reasons, neither *Martinez* nor *Trevino* provide this petitioner a basis for relief from the failure to meet the AEDPA's limitations period. Jones's untimely federal petition must be dismissed.

### 2. No Actual Innocence Exception

Jones asserts that there is evidence of his actual innocence in the records of the victim's medical treatment on July 15, August 18, September 15, and October 30, 1992. He does not in his federal habeas petition explain in detail how these records prove his innocence. Looking to his state court pleadings, Jones first asserted this claim of actual innocence based on the victim's medical records on September 25, 2001, as a supplement to his first application for post-conviction relief submitted by him on November 5, 2000. He claimed there that the doctors who tested the victim for gonorrhea on October 30, 1992 caused the penetration damage to the victim with their instruments used to conduct the test. He referred generally to her prior records between July and October of 1992 which he asserts do not contain findings by the doctors of vaginal damage or evidence of penetration.

His claims stemming from these records were litigated in the state post-conviction hearings held November 15, 2002 and March 14, 2003. In denying relief, the state trial court noted that, although these medical records were not produced at trial, S.S.'s pediatrician testified in detail about his examinations and treatment of S.S. over the relevant time period.[36] The state trial court also reviewed the victim's medical records, which were introduced at the hearing, and found that there was no indication "in any manner that the victim suffered from any genital abnormality of any kind," prior to July of 1992.[37] The Court also found that "[b]eginning in July, 1992, after the alleged rape, the records reflect vaginal discharge, the possibility of vaginitis, genital lesions, and a growing suspicion by medical personnel of sexual molestation."[38]

Considering the record as a whole, Jones does not present any new and reliable evidence of his factual innocence that could be considered to excuse the AEDPA's statute of limitations.

As an initial matter, the United States Supreme Court has **not** recognized a free-standing claim of actual innocence on federal habeas review. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993)). The Court instead has recognized that a credible showing of actual innocence may act as a gateway to overcome a procedurally defaulted or untimely filed federal habeas corpus claim. *McQuiggin*, 569 U.S. at 392. Jones's claim, however, fails to meet the new and credible threshold showing of his actual innocence to excuse his untimely filing under the AEDPA.

In *McQuiggin*, the Supreme Court held "that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or,

---

[36] St. Rec. Vol. 2 of 3, Reasons for Judgment, 3/25/03.

[37] *Id.*

[38] *Id.*

as in this case, expiration of the statute of limitations." *Id*., at 386. In recognizing the stringent standards of this exception to § 2244(d), the Supreme Court held that " [t]o invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id*., at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In addition, the actual innocence gateway should open only when the "evidence of innocence [is] so strong that a court cannot have confidence in the outcome of the trial." *Id*., at 401 (citation omitted). The Court must consider "the probative force of relevant evidence that was either excluded or unavailable at trial." *Schlup*, 513 U.S. at 327-28. "It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Id*., at 329.

A petitioner must show factual innocence through the presentation of "<u>new reliable</u> evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." (emphasis added) *Schlup*, 513 U.S. at 324; *see Stroman v. Thaler*, 405 F. App'x 933, 934-35 (5th Cir. 2010). The United States Fifth Circuit Court of Appeals has held that evidence is "not 'new' [when] it was always within the reach of [petitioner's] personal knowledge or reasonable investigation." *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008). The *Schlup* decision, however, did not require that the evidence be recently discovered, only that it be reliable and not have been presented at trial. *Gladney v. Pollard*, 799 F.3d 889, 898 (7th Cir. 2015) (citing *Schlup*, 513 U.S. at 324).

A petitioner's delay in presenting new but previously known or discoverable evidence is relevant to the credibility of the actual innocence claim and "as part of the assessment whether

15

actual innocence has been convincingly shown." *McQuiggin*, 569 U.S. at 399.  The Supreme Court has made clear that "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of ... evidence [of actual innocence]." *Schlup*, 513 U.S. at 332; *McQuiggin*, 569 U.S. at 399; *see also*, *House v. Bell*, 547 U.S. 518, 537 (2006).  The *McQuiggin* opinion was clear that "[t]he timing of such a petition, however, should seriously undermine the credibility of the actual-innocence claim." 569 U.S. at 400.

In this case and under these standards, Jones had the victim's medical records as early as 2001 while pursuing his first state application for post-conviction relief, which was fully resolved by the state courts by September 24, 2004.  He waited over twelve and one-half years to present his federal petition and actual innocence claim/excuse to a federal court on May 17, 2017.  This timing and lack of diligence seriously undermines the credibility and viability of Jones's arguments.  *McQuiggin*, 569 U.S. at 400.

Furthermore, Jones's has not referenced or presented any <u>reliable</u> new evidence of his factual innocence or any evidence that would convince a court that no juror would have found him guilty.  *Accord*, *Golmon v. Director, TDJC-CID*, No. 13CV325, 2013 WL 3724838, at *1 (E.D. Tex. Jul. 15, 2013).  His contentions in support of his actual innocence claim are part of the same line of defense and evidence that were presented a trial in an effort to demonstrate that S.S.'s symptoms did not link to him or to her having been raped by him.

Contrary to his arguments, S.S.'s medical records do not establish that the evidence of penetration was caused by the gonorrhea testing done on October 30, 1992, nor do they preclude the conclusion that Jones raped S.S.  Jones merely speculates a cause, because of the vaginal instruments that may have been used conducting the test for gonorrhea.  As determined by the state

16

trial court, S.S.'s medical records contained numerous indications prior to October 30, 1992, that her unusual vaginal symptoms at age four led medical personnel to suspect sexual abuse; it just took time to reach the diagnosis once other more common causes were excluded. The state trial court's review found these records consistent with the expert medical testimony already presented at Jones's trial. The state trial court also recalled on post-conviction review that Jones's medical records indicated the presence of skin variances on his penis that may have been genital warts not visible to the naked eye, a common trait for males with HPV and genital warts, all of which was consistent with the trial testimony from the State and defense experts.

Jones, therefore, provides no new and reliable evidence of his innocence to convince this Court that, had S.S.'s medical records been presented at trial, no juror would have found him guilty as required to meet the exception described in *McQuiggin* and its progeny. Jones's assertion of actual innocence is insufficient to overcome the statute of limitations and the bar to review of his federal claims. His untimely filed federal petition must be dismissed.

## V.      Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Jones's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[39]

New Orleans, Louisiana, this 29th day of March, 2018.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[39]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.